**In re Patricia S. MOSELEY, Debtor.**

**Bankruptcy No. LAX 84–08358 SB.**

United States Bankruptcy Court, C.D. California.

May 29, 1987.

Thomas Davis of Ronald M. Stark & Associates, Norwalk, Cal., for debtor.

Robert S. Horwitz, Asst. U.S. Atty., Washington, D.C., for I.R.S.

## MEMORANDUM OF DECISION ON IRS MOTION TO ALLOW CLAIM

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

The Internal Revenue Service ("IRS") brings this motion to allow its unsecured claim for the full amount of $18,131.74, instead of a much smaller sum provided in the debtor's confirmed Chapter 13 plan, and to modify the plan to provide for payment of the larger amount. The debtor has filed an application to amend her plan to delete the amount provided for the IRS, and to pay it nothing.

This motion raises the issue of whether and to what extent an untimely IRS priority claim in a Chapter 13 case is barred after the order confirming the Chapter 13 plan has become final, where no notice of a bar date or of the first meeting of creditors was given to the IRS, but where the plan (which included notice of the date and time of the confirmation hearing) was timely served on the IRS.

In this case the first amended Chapter 13 plan was served on the IRS two months before its confirmation. The IRS did not object to the plan, and did not file its claim until 428 days after the first meeting of creditors, and a year and three days after the final confirmation hearing.

The Court holds that the additional IRS claim is barred by the confirmation order, and that it must be disallowed. The amount provided in the plan for taxes, including those owing to the IRS, is binding on the IRS. However, the failure to give notice of the bar date permits the IRS to

prove its claim, up to the amount provided for priority taxes in the confirmed plan: The plan is binding on the debtor (as well as creditors), and the provision for payment to the IRS may not be deleted.

## II. FACTS

Patricia S. Moseley filed this case under Chapter 7 of the Bankruptcy Code on April 18, 1984. On June 6, 1984 an order was entered converting the case to one under Chapter 13 of the Bankruptcy Code. The Chapter 13 plan was confirmed at a hearing on October 22, 1984, and the order confirming the plan was entered on October 29, 1984.

With her original petition (which was filed before the debtor obtained counsel in this case) the debtor filed an unsigned partial schedule of liabilities, which showed that she owed $9,000 to the IRS for unspecified taxes. The original Chapter 13 statement, filed on July 23, 1984, indicated that she owed priority taxes in the amount of $17,549, including taxes owing to the IRS in the amount of $13,883, which the plan proposed to pay over a period of 35 months. On August 22, 1984 the debtor filed her first amended plan, which provided only $3,323 for priority taxes (including taxes owing to the IRS), which were to be paid over the first 17 months of the 60–month plan. The plan did not specify which taxing authorities were to be paid, or how much of the $3,323 each was to receive. An amended statement filed at the same time (but not served on creditors) indicated that the debtor owed only $1,000 in priority taxes to the IRS.

The IRS claim arises out of the debtor's operation of Sleepy's Radio, an electronics repair business that the debtor owned as a sole proprietorship. The IRS claim is based principally upon employment taxes owing for 1983 and the last quarter of 1982, and includes pre-petition interest in the amount of $1,740.25 and penalties in the amount of $4,572.20. The debtor filed her employment tax return for 1983 on September 27, 1984, and the IRS assessed the 1983 taxes on November 19, 1984.

At the time of the filing of the original Chapter 7 case, the IRS was listed as a creditor on the mailing matrix, but no mailing address was provided for it. In consequence, the IRS was not given notice of the first meeting of creditors for the Chapter 7 case, which was set for May 27, 1984. Following the conversion to a case under Chapter 13, the clerk's office served notice of a new first meeting of creditors, set for August 23, 1984, and of the plan confirmation hearing on September 4, 1984. The notice stated that claims must be filed within 90 days after the August 23, 1984 first meeting of creditors. This notice was likewise not served on the IRS.

The IRS was apparently given its first notice of the filing of this case when the first amended plan was served on its Special Procedures Section office in Los Angeles, California on August 21, 1984. This plan gave notice of the September 4, 1984 plan confirmation hearing date. Neither the original Chapter 13 statement nor the first amended statement was served on the IRS. The IRS did not file any objection to the plan, and apparently did not attend the confirmation hearing.

The IRS received additional notice of this case in connection with an order to show cause for contempt, which resulted from a post-petition levy by the IRS on the bank account of Sleepy's Radio in violation of the automatic stay. The debtor filed the original application for an order to show cause on July 20, 1984, and it was set for hearing on August 7, 1984. The Court took no action on the application on August 7, apparently because of lack of service on the IRS. The debtor filed a new application for an order to show cause on August 23, 1984, and served it by mail on the IRS on August 22, 1984. The Court issued the order to show cause on September 10, 1984, and set it for hearing on October 1, 1984. The IRS responded by terminating the garnishment, and on November 5, 1984 the IRS transmitted to the debtor a refund check in the amount of $421.20, representing the levy proceeds plus interest. While the check was not transmitted until November, the IRS agreed to terminate the levy

and to transmit the funds prior to the October 1, 1984 hearing on the order to show cause.

The confirmation hearing was continued from September 4, 1984 to October 22, 1984, apparently to allow additional time for creditors to file objections to the Chapter 13 plan. The first amended plan was confirmed on October 22, and the confirmation order was entered on October 29, 1984. The order became final when no timely appeal was taken. The plan provided for payments of $567.41 per month for 60 months.

The IRS filed its proof of claim on October 25, 1985 in the amount of $18,131.74. The IRS has offered no explanation for its failure to file its claim earlier, or for its failure to object to the first amended plan. The debtor objected to the claim, and the IRS replied that the claim should be allowed because of lack of notice of the bar date. The Court sustained the objection by order entered October 15, 1986.

The IRS subsequently brought a motion pursuant to Bankruptcy Code § 502(j)[1] and Bankruptcy Rule 3008[2] to allow the claim and to modify the plan. The Court treats the motion as a timely motion to reconsider the order sustaining the objection.

The debtor filed her second amended plan and moved its confirmation on September 15, 1986. The second amended plan proposes a reduction of the plan payments to $290.65 per month, for 30 months from the date of amendment. It provides for the payment of $519.33 in unspecified priority tax claims. The changes in the second amended plan result from two factors: (1) loss of the debtor's real property through foreclosure after relief from stay; (2) failure of a number of creditors, including the IRS, to file timely claims. Although no objections to the second amended plan have been filed, the Court has not confirmed it as of yet.

## III. CONTENTIONS OF THE PARTIES

The IRS contends that its claim should be allowed in full because it was not given notice of the bar date for filing proofs of claim, and the debtor did not file her 1983 tax returns until shortly before the bar date. Without the tax returns, the IRS contends that it was unable to determine the amount of taxes owing by the debtor. In addition, the IRS contends that the debtor purposely misled the Court in reducing the amount of the federal taxes to be paid through the confirmed plan.

The debtor opposes the allowance of the increased IRS claim, on the grounds (1) that the last day for filing claims is set by rule and not court order, and that the rule provides the required notice of the bar date; (2) that the IRS should have either filed an estimated claim or sought an extension of time to file its claim. The debtor offers no opposition on the merits of the IRS claim.

## IV. ANALYSIS

■ The automatic stay set forth in Bankruptcy Code § 362(a), 11 U.S.C. § 362(a) (1979 & Supp.1987), is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 760–761, 88 L.Ed.2d 859 (1986). It prohibits the IRS from enforcing its tax claim against the debtor so long as

---

1. Bankruptcy Code § 502(j), 11 U.S.C. § 502(j) (1979) provided, for cases filed prior to October 8, 1984:

 Before a case is closed, a claim that is disallowed may be reconsidered for cause, and reallowed or disallowed according to the equities of the case.

 Congress amended section 502(j) in 1984 to provide for the consequences of the allowance of a previously disallowed claim. *See* 11 U.S.C. § 502(j) (Supp.1987).

 On the requirement of cause, *see Colley v. National Bank of Texas (In re Colley)*, 814 F.2d 1008, 1010 (5th Cir.1987).

2. Rule 3008 provides: "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The

the case is pending.[3] Thus the IRS may pursue its claim against the debtor only to the extent that the debtor's confirmed Chapter 13 plan provides for payment to it.

When a Chapter 13 plan is confirmed, the consequences are set forth in Bankruptcy Code § 1327(a) 11 U.S.C. 1327(a):

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

*See, also, Anaheim Savings & Loan Association v. Evans (In re Evans)*, 30 B.R. 530 (Bankr. 9th Cir.1983); *Los Angeles Title & Trust Deed v. Risser (In re Risser)*, 22 B.R. 868 (Bankr. S.D.Cal.1982); *cf.* Bankruptcy Code § 1141(a), 11 U.S.C. § 1141(a)(1979 & Supp.1987) (similar provision for Chapter 11 plans).

■ This case raises the general question of the treatment of priority claims in a Chapter 13 plan. Priority Chapter 13 claims are governed by Bankruptcy Code § 1322(a), 11 U.S.C. § 1322(a) (1979 & Supp.1987):

The plan shall—

(1) ...

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim....

This section requires that a Chapter 13 plan provide for the payment in full of all debts entitled to priority under section 507 (unless the claimant agrees otherwise). Section 507(a) establishes seven levels of priority claims. The seventh level priority is granted for certain taxes, including those at issue in this case.[4] Thus the debtor was required to provide in her plan for all of the taxes at issue that were owing to the IRS.

## A. Plan Provisions

There is no official form for Chapter 13 plans. The form used in this Court divides Chapter 13 debts into five classes: (1) priority claims; (2) secured claims to be paid in full under the plan; (3) secured or unsecured claims where the last payment is due after the final payment under the plan is due (including debt on the debtor's principal residence); (4) general unsecured claims; (5) post-petition claims allowed under Bankruptcy Code § 1305.

The first amended plan in this case allocates plan payments as follows:

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

. . . . .

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

... or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

---

court after a hearing on notice shall enter an appropriate order."

3. In a Chapter 13 case, the automatic stay continues until the earliest of: (1) the grant or denial of a discharge to the debtor; (2) dismissal of the case; (3) closing of the case. Bankruptcy Code § 362(c)(2), 11 U.S.C. § 362(c)(2) (Supp.1987).

4. Bankruptcy Code § 507(a), 11 U.S.C. § 507(a) (1979 & Supp.1987) provides:

The following expenses and claims have priority in the following order:

. . . . .

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

... or

| | Allowed Claim | Monthly Pmt. | No. of Pmts. | Total Pmt. |
|---|---|---|---|---|
| Class One | | | | |
| Trustee's Compensation | $3,100.80 | $ 51.58 | 60 | $3,100.80 [5] |
| Attorneys Fees | 1,000.00 | 50.00 | 20 | 1,000.00 |
| Class Two-Property Tax | 550.00 | 21.31 | 30 | 639.30 [6] |
| Class Three | | | | |
| Home Savings | 542.68 | 21.03 | 30 | 630.90 |
| AVCO | 7,133.56 | 276.41 | 30 | 8,292.30 |
| S.B.A. Loan | 3,030.00 | 117.41 | 30 | 3,522.30 |
| Class Four (70% Pro Rata) | 0 [7] | | | |
| Class Five | 0 | | | |

The plan also specifies the total amount of the debtor's monthly income allocated to monthly plan payments, and how much is to be allocated to each class of creditors.

At the confirmation hearing the Court examines the debtor's income, projected expenses and plan payments, to determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." Bankruptcy Code § 1325(a)(6), 11 U.S.C. § 1325(a)(6)(1979). The confirmation of the plan determines the amount of monthly payments that the debtor is to make, and the duration of the plan. In this case the plan required payments of $567.41 per month for a duration of 60 months.[8]

For certain classes of creditors the plan specifies the allocation of plan payments to each creditor. Secured creditors to be paid in full under the plan and creditors whose debts are not paid over the duration of the plan (classes two and three) are individually provided for in the plan. General unsecured creditors are not individually identified: The plan provides only a general sum to be divided among them, and the percentage to be paid on each of their claims.[9]

The class one priority claims are subdivided into (1) trustee's fees, (2) attorneys fees, (3) taxes and (4) other priority debts. For the priority tax claims the plan does not specify the taxing authorities to be paid or the allocation among such authorities.[10]

5. The allocation for the trustee's compensation in this plan is excessive. The maximum fee allowable for a Chapter 13 trustee, under the pilot district program for United States Trustees that was in place in this district in 1984, was ten percent of the funds distributed, plus certain expenses. Pub.L. 95–598, § 586(e)(1)(B), 92 Stat. 2664, (1978) (prior to 1986 amendment).

6. The total payment to the class two and class three creditors exceeds the allowed claim, because the plan provides for interest on these claims at 12% per annum.

7. Although the debtor estimated that she owed no general unsecured debts, seven creditors have filed proofs of claim in this class, including two whose proofs of claim were filed late. The general unsecured claims total $11,803.40, of which the timely claims account for $6,667.58.

8. While the confirmed plan in this case is nominally a 60–month plan, the maximum length authorized under Bankruptcy Code § 1322(c), 11 U.S.C. § 1322(c) (1979), it appears that the debtor expected the plan to be paid off in 30 months, unless unexpected claims were made.

The payments were sufficient to pay the class one, class two and class three debts in full in less than 28 months (after adjustment of the trustee's compensation, see note 5, supra ), if the payments were made timely. Because of the substantial general unsecured claims, which apparently were not anticipated, it will now take almost 60 months to complete the plan.

9. Under the Chapter 13 general order in this Court, the percentage to be paid each general unsecured creditor is controlling. If the allowed general unsecured claims exceed the plan amount, the plan payment is increased unless the debtor amends the plan. In districts where a "pot" plan is approved, the "pot" for general unsecured creditors controls, and it is divided pro rata among the general unsecured claims.

10. The Court has recently modified the Chapter 13 plan form used in this Court to separate out taxes owing to the IRS from other taxes. Under this provision the IRS will be required to litigate its entitlement to priority taxes fully at the time of confirmation. See Anaheim Savings & Loan Association v. Evans (In re Evans), 30 B.R. 530, 531 (Bankr. 9th Cir.1983), discussed infra.

### B. Procedure for Attacking Confirmed Plan

 Once a Chapter 13 plan has been confirmed, there are seven procedural routes that may be available to an unsecured creditor[11] to attack the plan: (1) appeal of the confirmation order; (2) motion to alter or amend the order, including a motion for reconsideration or for rehearing; (3) motion to dismiss the case; (4) motion to correct a clerical mistake; (5) adversary proceeding to revoke confirmation; (6) motion to set aside the confirmation on due process grounds; (7) motion to modify the Chapter 13 plan.

The IRS motion before the Court is brought principally on the last two of these grounds. While the IRS also apparently attempts to invoke the fifth ground, the motion before the Court is untimely for this purpose, and it does not follow the proper procedure.

### C. Modification of Plan After Confirmation

A motion to modify a Chapter 13 plan in a case filed before October 8, 1984 is governed by former Bankruptcy Code § 1329(a), 11 U.S.C. § 1329(a)(1979), which provided:

At any time after confirmation of the plan but before completion of payments under a plan, the plan may be modified to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan. . . .

---

**11.** An additional avenue of attack on a Chapter 13 confirmation order, or its effects, may be available to a secured creditor in certain circumstances. This Court requires that the debtor make all post-petition mortgage payments coming due prior to the confirmation hearing (except any falling due immediately before the hearing, as to which a late charge has not yet accrued). The Court does not delay confirmation if a secured creditor has not recorded payments, because they may be in transit or may not yet appear on a creditor's books. Sometimes debtors testify falsely that they have made the required mortgage payments. Under *Evans, supra* note 10, the confirmation is normally res judicata as to any such payments. However, if the debtor has testified falsely that the debtor made the payments, on a motion for relief from stay the Court will consider the failure to make these payments.

The remaining provisions of section 1329 require that the plan as modified must satisfy the statutory requirements for the confirmation of a Chapter 13 plan.

### 1. Standing

The first impediment to the IRS motion to modify the Chapter 13 plan is its standing to bring such a motion. In three reported cases courts have held that a Chapter 13 trustee or a creditor lacked standing to invoke section 1329 at all, prior to the 1984 amendments to the Bankruptcy Code, to bring a motion to modify a Chapter 13 plan after confirmation. *In re Boone*, 53 B.R. 78, 80 (Bankr.E.D.Va.1985) (trustee); *In re Nelson*, 27 B.R. 341, 345 (Bankr.M.D. Ga.1983) (creditor with post-petition claim for medical expenses that may be allowable under section 1305(a)(2)); *In re Fluharty*, 23 B.R. 426, 429 (Bankr.N.D.Ohio 1982) (creditor). Only one reported case has been discovered that grants standing to the Chapter 13 trustee: In *In re Koonce*, 54 B.R. 643 (Bankr.D.S.C.1985), the court held that the debtor's winning of the Massachusetts State Lottery, which increased his income by $49,000 per year for twenty years, constituted changed circumstances, and the court granted the Chapter 13 trustee's motion to increase the payment to unsecured creditors by $13,800 to permit full payment to them. No reported pre–1984 case has been discovered that gives standing to a creditor to modify a plan under section 1329.

If a debtor fails to make the payments required by a Chapter 13 plan, either to the Chapter 13 trustee or directly to a creditor, a creditor may also move for relief from stay on these grounds. *See, e.g., School Employees' Retirement Fund v. Pizzullo (In re Pizzullo)*, 33 B.R. 740, 742 (Bankr.E.D.Pa.1983).

In addition, there is dictum in one district court opinion on an appeal, *Doane v. Appalachian Power Co. (In re Doane)*, 19 B.R., 1007, 1009 (W.D.Va.1982), that a creditor omitted from a Chapter 13 plan may move under section 1307(c) for "cause" to dismiss the case or to convert it to a case under Chapter 7.

The Court also has the power *sua sponte* to revoke the confirmation of a Chapter 13 plan pursuant to Bankruptcy Code § 105, 11 U.S.C. § 105 (1979 & Supp.1987), if the plan was not filed in good faith. *In re Chinichian*, 784 F.2d 1440, 1442–43 (9th Cir.1986).

The Bankruptcy Amendments and Federal Judgeship Act of 1984 changed the language of section 1329 to permit the trustee or a holder of an allowed unsecured claim to move to amend the plan.[12] *See,* 11 U.S.C. § 1329(a) (Supp.1987). However, the amendment is effective only for cases filed on or after October 8, 1984. In consequence, this case is governed by the prior law.

It is not necessary for the Court to resolve the standing issue in this case, because the IRS's motion must be denied on the grounds of both res judicata and laches.

## 2. Requirements for Motion to Modify Claim

### a. Motion by Debtor

Section 1329 contains no requirement of a showing of cause for the modification of a plan. Indeed, it sets no threshold whatever as to what a moving party must show to modify a plan.

■ Because Chapter 13 is a voluntary debt repayment program, no threshold should be required for a debtor's motion to amend a plan to provide more generous payments to a creditor, apart from the general requirements for confirmation of a Chapter 13 plan. On a proper showing of changed circumstances,[13] a debtor may also amend a plan under section 1329 to reduce the amount of the payments, extend the duration of the plan (not to exceed five years), change the amount due to a particular creditor, or obtain a temporary suspension of plan payments. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 125 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.

News 5963, 6086; *In re Johnson,* 708 F.2d 865, 868 (2d Cir.1983). Section 1329(a)(3) also authorizes a debtor to amend a Chapter 13 plan to take account of the payment of a creditor outside the plan. *In re Tucker,* 35 B.R. 35, 36 (Bankr.M.D.Tenn.1983) (creditor paid through proceeds of casualty insurance policy).

Section 1329(b)(1) requires that the modified plan, like an original plan, meet the confirmation standards of section 1325(a), 11 U.S.C. § 1325(a).

### b. Motion by Creditor

■ A creditor may move to modify a plan adversely to a debtor after confirmation only upon a showing of a post-confirmation default by the debtor, or that the circumstances have changed since confirmation. *In re Toth,* 61 B.R. 160, 166 (Bankr.N.D.Ill.1986). Any other motion to modify is barred by res judicata.

The Chapter 13 plan forms presently used by the Court determine the exact sum to be paid to the IRS over the life of the plan. The confirmation of such a plan fixes the rights of the IRS under the plan, and its objections are adjudicated when the confirmation order becomes final. The governing Ninth Circuit case is *Anaheim Savings & Loan Association v. Evans (In re Evans),* 30 B.R. 530, 531 (Bankr. 9th Cir. 1983), which held that a secured creditor is barred from seeking post-confirmation relief from stay absent a post-confirmation default under the plan. Because Bankruptcy Code § 1327 provides that the terms of a confirmed plan bind all creditors, the court reasoned:

An order confirming a Chapter 13 plan is res judicata as to all justiciable issues

**12.** In one post–1984 case the Chapter 13 trustee has successfully moved under section 1329 to modify a plan to require increased payments. In *In re Euerle,* 70 B.R. 72 (Bankr.D.N.H.1987), the court found that the debtor had failed to disclose that he was about to inherit $300,000 from his deceased father, which was property of the estate. In consequence, the court required that the five-year plan be amended to increase the distribution to unsecured creditors from 73% to 100% plus interest, and set a further hearing on whether sanctions should be imposed. *Accord, Pennsylvania Department of Public Welfare v. Johnson-Allen (In re Johnson-*

*Allen),* 69 B.R. 461, 465 (Bankr.E.D.Pa.1987) (dictum).

**13.** No particularly burdensome proof is required for a debtor to show "changed circumstances": The legislative history authorizes modification of a Chapter 13 plan "[i]f a problem arises in the execution of the plan...." H.R. Rep. No. 595, 95th Cong., 1st Sess. 125 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6086; *In re Davis,* 34 B.R. 319 (Bankr.E.D.Va.1983).

which were or could have been decided at the confirmation hearing.... Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan.

*Accord, In re Zimble,* 47 B.R. 639, 640 (Bankr.D.R.I.1985); *Western Thrift & Loan Association v. Blair (In re Blair),* 21 B.R. 316, 317 (Bankr.S.D.Cal.1982); *Ford Motor Credit Co. v. Lewis (In re Lewis),* 8 B.R. 132, 137 (Bankr.D.Idaho 1981).

■ The IRS chiefly argues that its claim should not be barred, because it was not given notice of the bar date for filing proofs of claim, and that this was a due process violation. The IRS's argument has little merit because it misperceives why its claim is mostly barred: Its claim is barred (except for the $3,323 provided for taxes in the plan) because the confirmed plan is res judicata, and not because the IRS missed the bar date for filing claims.

Because the plan in this case did not specify how much of the $3,323 provided for priority taxes was to be paid to the IRS, the confirmation of the plan did not fully adjudicate the rights of the IRS. The IRS could not determine from the plan whether it was to receive the entire $3,323, or some portion thereof. The amended Chapter 13 statement indicated that the IRS was to receive only $1,000. However, there is no requirement that the statement be served on creditors, and there is no evidence that this statement was served on the IRS.[14] Thus the confirmation did not limit the IRS to a claim of $1,000.

The confirmation of the debtor's Chapter 13 plan did limit the IRS's rights, however. The Court determined at the confirmation hearing that the debtor should make payments of $567.41 per month, and that a total of $3,323 should be paid in priority taxes. The Court examined the debtor's budget and the proposed plan, and determined that the plan met the confirmation requirements set forth in Bankruptcy Code § 1325(a), 11 U.S.C. 1325(a) (1979).[15] These matters are res judicata under the confirmed plan. To hold otherwise would deprive the plan of any finality whatever as to the rights of the debtor and creditors, in disregard of section 1327(a). Thus the confirmed plan limits the IRS's priority claim to $3,323.

In this case the IRS has made no showing of post-confirmation default or changed circumstances to warrant modification of the plan. Thus the Court must apply the res judicata rule resulting from the confir-

**14.** This Court's general order on Chapter 13 cases requires that Chapter 13 plans be served on creditors at least 20 days before the first meeting of creditors. No rule requires the service of Chapter 13 statements on creditors, and in fact they rarely are so served. Counsel for debtors have opposed a local rule that would require that Chapter 13 statements be served on all creditors, on the grounds that their limited use to creditors does not merit the copying and mailing expenses. Counsel for creditors have not given substantial support to such a local rule.

**15.** Prior to its amendment in 1984, section 1325(a) provided:

The court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
 (A) the holder of such claim has accepted the plan;
 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 (C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.
In 1984 Congress added a new subsection (b), which provides an additional minimum payment requirement for a plan to qualify for confirmation.

mation of the plan to bar the IRS's claim, insofar as it exceeds $3,323.

### 3. Laches By IRS

■ The IRS argues that the debtor's late filing of her 1983 tax returns excuses it from filing a timely proof of claim. Presumably the IRS would argue that for the same reason it is excused from filing a timely opposition to the Chapter 13 plan.

This may have been a legitimate argument, if the IRS had brought its motion to amend the plan promptly after it assessed the tax against the debtor. *See, e.g., In re Sitzberger,* 65 B.R. 256 (Bankr.S.D.Cal. 1986) (late IRS claim filed less than two months after tax return filed); *In re Pine Associates,* 35 B.R. 49, 50 (Bankr.D.Conn. 1983) (claim filed a month after creditor learned of bar date). However, the IRS delayed for almost a year before filing its claim: It admits that the tax was assessed on November 19, 1984, but that its claim was not filed until October 25, 1985. Its motion to amend the plan was not filed until December 4, 1986, after its claim had been denied.

The IRS's unexplained delay of almost a year after assessing the tax against the debtor prevents it from taking any advantage from the debtor's delay in filing her 1983 tax returns. Dilatory efforts to resurrect time-barred claims do not compel judicial lenity. *In re Chicago, Rock Island & Pacific Railroad Co.,* 788 F.2d 1280, 1284 (7th Cir.1986); *In re Toth,* 61 B.R. 160, 168 (Bankr.N.D.Ill.1986). On these facts, the IRS's claim is barred by the confirmation order on the first amended plan, except with respect to the $3,323 provided therein.

### D. Due Process

■ The IRS asserts that its due process rights would be violated if its claim for $18,131.74 is not allowed in full in this case. A creditor has a right to notice, under the due process clause of the fifth amendment to the United States Constitution,[16] before the creditor's rights can be cut off.

■ Due process requires that a creditor such as the IRS be given notice of the hearing on the confirmation of a Chapter 13 debtor's plan, before the creditor may be bound by the plan. *In re Toth,* 61 B.R. 160, 165 (Bankr.N.D.Ill.1986); *cf. Reliable Electric Co. v. Olson Construction Co.,* 726 F.2d 620, 623 (10th Cir.1984) (due process requires notice of a Chapter 11 confirmation hearing before the confirmed plan can discharge a claim). Similarly, the United States Supreme Court has held that a claim may not be barred unless the requisite notice of a claims bar date has been given. *City of New York v. New York, New Haven & Hartford Railroad,* 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (interpreting statutory requirement of "reasonable notice" for a railroad reorganization under section 77 of the Bankruptcy Act); *accord, In re Pine Associates, supra,* 35 B.R. at 51.

The notice requirement has two elements. First, the notice must be given in such a manner that it is reasonably calculated to reach its intended audience. Second, the content of the notice must reasonably inform the recipient of the nature of the upcoming proceeding. *Drabkin v. Midland-Ross (In re Autotrain),* 810 F.2d 270, 278 (D.C.Cir.1987).

The IRS's due process rights must be analyzed in two parts, corresponding to the rights adjudicated in the confirmation of the plan and those left for determination in the claims process.

### 1. Plan Confirmation

■ The IRS has offered no evidence that it failed to receive service of the debtor's first amended plan and notice of the confirmation hearing. The certificate of service in the file shows that the IRS was properly served by mail, and the IRS has offered no evidence to the contrary. The plan shows on its face, "Conf. Date: 9/4/84." Service of the plan provided actual notice of the contents of the plan, and notice of the confirmation hearing date.

---

**16.** The fifth amendment to the United States Constitution provides: "[N]or shall any person

... be deprived of life, liberty or property, without due process of law...."

This notice was sufficient to satisfy both the manner and the content requirements of due process. *City of New York, supra; In re Toth,* 61 B.R. 160, 166 (Bankr.N.D.Ill. 1986) (secured creditor bound by confirmed plan that was not served on it, where it learned of plan after confirmation, but 24 days before confirmation order became final, and it made no motion for reconsideration).

The law is well established that a timely and accurate mailing, such as in this case, raises a rebuttable presumption that the mailed material was received. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932) (receipt of letter resulting in mail fraud); *In re Nimz Transportation, Inc.,* 505 F.2d 177, 179 (7th Cir.1974) (mailing proof of claim establishes rebuttable presumption of its filing, which is not rebutted by failing to find proof of claim in court file); *Majors v. Capitol Chevrolet (In re Majors),* 19 B.R. 275, 278 (Bankr.M.D.Tenn.1982) (receipt of notice of Chapter 13 meeting of creditors and confirmation hearing); *In re Heyward,* 15 B.R. 629, 632–33 (Bankr.E.D.N.Y.1981) (same). If the IRS had offered substantial evidence of non-receipt of the first amended plan, the presumption of receipt would have been rebutted and would have disappeared. *In re Yoder,* 758 F.2d 1114, 1118 (6th Cir.1985). The Court would then have determined whether the IRS received the plan, based on the admissible evidence. However, the IRS has offered no such evidence. In consequence, the presumption applies, and the IRS is held to have received the first amended plan.[17]

 The IRS cannot be excused, on account of its size, from its obligations as a creditor with respect to a Chapter 13 debtor. The Bankruptcy Code and rules provide no special treatment for large creditors such as the IRS. While the procedural requirements of Chapter 13 may have imposed a burden on creditors of Chapter 13 debtors in the past, the effective computerization of financial records (including computerization by the IRS) has made this problem manageable for even the largest of institutional creditors.

In consequence, the Court holds that the IRS was properly served with the first amended plan, and that it received sufficient notice of the confirmation hearing to satisfy both the manner and the content requirements of due process. Thus the IRS is bound by the confirmation order, and by what was determined by the Court at that time. As the discussion *supra* demonstrates, this limits the IRS claim to $3,323.

**2. Claim**

 If the debtor's plan had specified the sum to be paid to the IRS under the plan (as plans before this Court do now), it would have been unnecessary for the IRS to file a proof of claim. The confirmation of the plan would have completely determined the IRS's rights, and it would be precluded from litigating them further. Because the plan did not specify the sum to be paid to the IRS, the IRS was required to file a proof of claim, and it was entitled to appropriate notice of the bar date for filing proofs of claim. Bankruptcy Rule 3002(c) provides:

In a ... Chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....

Under this provision the IRS's proof of claim was due on November 21, 1984. However, the IRS received no notice of this bar date.[18]

---

17. Although the plan gave only 14 days notice of the confirmation hearing, instead of the 25 days required by Bankruptcy Rule 2002(b), the IRS has never objected to the timeliness of its notice of the confirmation hearing. This objection has thus been waived.

18. There is a line of cases holding that a claim may be barred even where notice of the bar date was not received. *See, e.g., Majors v. Capitol Chevrolet Co. (In re Majors),* 19 B.R. 275, 278 (Bankr.M.D.Tenn.1982); *In re Torres,* 15 B.R. 794, 796 (Bankr.E.D.N.Y.1981). These cases are incorrect for the reasons set forth herein, and have been disapproved at the circuit level. *In re Yoder Co.,* 758 F.2d 1114, 1118 n. 5 (6th Cir. 1985).

■ Because the IRS failed to receive notice of the bar date for filing its proof of claim, due process dictates that its claim be treated as timely, to the extent that it is permitted to make a claim under the confirmed plan. The extent of its permissible claim is the $3,323 provided for taxes under the plan. Thus the IRS claim must be allowed in this amount.

The Court recognizes that this ruling will require the debtor to pay more in priority taxes than the $3,323 provided in the plan. California has filed a priority tax claim in the amount of $129.97, and the Board of Equalization has filed a priority tax claim in the amount of $889.00. Both of these claims have been allowed and paid. The allowance of the IRS claim in the amount of $3,323 will require a plan amendment to provide a total of $4,341.97 for priority taxes.

### E. Revocation of Confirmation

■ If, as the IRS alleges, the debtor did in fact deceive the Court in asserting that she owed only $1,000 to the IRS, the IRS's remedy would lie in an adversary proceeding to revoke confirmation under Bankruptcy Code § 1330(a), 11 U.S.C. § 1330(a) (1979).[19] A revocation proceeding must be brought within 180 days of the entry of the confirmation order.

■ An adversary proceeding, rather than a motion such as the one before the Court, is the required procedural vehicle for a party seeking revocation of a confirmation order. *See* Bankruptcy Rule 7001(4). An adversary proceeding is required because a revocation effort will normally be contested, and the parties will need the opportunity to obtain all available evidence, and to present it in an evidentiary hearing.

■ More important, a court may not revoke the confirmation of a Chapter 13 plan under section 1330 unless the confirmation was procured by fraud.[20]

■ To support a complaint for revocation, the plaintiff must prove each of the elements of a traditional cause of action for deceit: (1) that the debtor made a representation regarding her compliance with Code § 1325 which was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; (3) that the representation was made to induce the court to rely upon it; (4) the court did rely upon it; and (5) that as a consequence of such reliance, the court entered the confirmation order. *Stamford Municipal Employees' Credit Union v. Edwards (In re Edwards)*, 67 B.R. 1008, 1010 (Bankr.D. Conn.1986) (insufficient evidence of fraud).

Because of the difficulties in showing such fraud, this provision is rarely invoked. There appears to be only one reported case in which a court has revoked the confirmation of a Chapter 13 plan under section 1330: In *In re Powers*, 48 B.R. 120 (Bankr. M.D.La.1985), the court revoked confirmation because the debtor had failed to disclose certain assets in his statement, had listed other valuable assets as valueless, and had sold a piece of unlisted equipment a month after confirmation and used the proceeds for a scuba diving vacation in Cozumel, Mexico.

Revocation was denied in seven discovered cases: *In re Edwards, supra; United States v. Cleveland (In re Cleveland)*, 64 B.R. 810 (Bankr.S.D.Cal.1986) (no evidence of fraud); *In re Russell*, 29 B.R. 332, 334–35 (Bankr.E.D.N.Y.1983) (same); *Security*

**19.** Section 1330(a) provides:
> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

**20.** Section 1330 preempts Rule 60(b) of the Federal Rules of Civil Procedure, incorporated by reference (with exceptions not material here) in Bankruptcy Rule 9024, which would otherwise provide additional grounds for revoking a plan confirmation order.

The Advisory Committee note to Rule 9024 states: "For the purpose of this rule all orders of the bankruptcy court are subject to Rule 60 F.R.Civ.P.," subject only to the additional time restraints in Bankruptcy Code §§ 727(e), 1144 and 1330. However, the Advisory Committee's language is overbroad: This rule is not available to attack a plan confirmation order.

*Insurance Co. v. Vratanina (In re Vratanina)*, 22 B.R. 453 (Bankr.N.D.Ill.1982) (typographical error in address of plaintiff's attorney resulting in lack of notice could not be used to revoke confirmation, where moving party failed to show that plan should not have been confirmed); *In re Torres*, 15 B.R. 794, 798 (Bankr.E.D.N.Y. 1981) (no fraud allegation); *Mercantile Holdings v. Dobkin (In re Dobkin)*, 12 B.R. 934, 936 (Bankr.N.D.Ill.1981) (untimely complaint); *GMAC v. Willis (In re Willis)*, 6 B.R. 555, 567 (Bankr.N.D.Ill.1980) (no evidence of fraud).

▆▆ The IRS has charged that the debtor purposely misled the Court in reducing the taxes provided for in the plan. Such a charge, if proven, could conceivably support the revocation of confirmation, if it were timely brought before the Court in an adversary proceeding. However, the IRS has not brought an adversary proceeding before the Court, and such a complaint is now time-barred by the statutory requirement that it be brought within 180 days after the entry of the confirmation order.

Even if the 180–day bar of section 1330 is subject to tolling for lack of discovery, it appears that the IRS knew or should have known of the debtor's deception by November 19, 1984. Thus any tolling of the 180–day bar of section 1330 does not permit the IRS now to file a complaint under section 1330 to revoke confirmation of the plan.

In summary, the IRS cannot proceed under section 1330 to revoke the confirmation of the plan in this case.

### F. Other Possible Attacks on Confirmed Plan

Four possible types of attack on a confirmed Chapter 13 plan by an unsecured creditor are not invoked by the IRS, and are mentioned here only briefly for completeness.

### 1. Appeal of Confirmation Order

The most traditional attack on a plan confirmation order is an appeal to a higher court.[21] Such an appeal must be taken within ten days of the entry of the confirmation order. Bankruptcy Rule 8002(a). Bankruptcy Rule 8002(c) authorizes a court to extend the time for filing a notice of appeal for up to twenty additional days. For an appeal of a confirmation order the rule requires that the extension be obtained prior to the expiration of the original ten-day period.

The IRS made no effort to appeal the confirmation order, which was entered on October 29, 1984. The time to appeal expired on November 8, 1984. For this reason, the IRS has not chosen this avenue to attack the confirmation order.

### 2. Motion to Alter or Amend Order (Motion to Reconsider)

A motion to alter or amend the confirmation order is available, in appropriate circumstances, under Rule 59(e) of the Federal Rules of Civil Procedure, incorporated by reference in Bankruptcy Rule 9023. Insofar as a motion to reconsider or a motion for rehearing is available under the Federal Rules of Civil Procedure or the Bankruptcy Rules (except a motion to reconsider a claim for cause under Bankruptcy Rule 3008), it must be brought under Rule 59(e). Such a motion must be served no later than 10 days after entry of the judgment or order.

The IRS makes no attempt to invoke this rule as to the confirmation order in this case, because the 10 day time limit ran in 1984.

### 3. Motion to Dismiss

Bankruptcy Code § 1307(c)[22] authorizes a creditor to move to dismiss a Chapter 13

---

**21.** In the Ninth Circuit, the parties have a choice of review by the district court or by the Ninth Circuit Bankruptcy Appellate Panel.

**22.** Bankruptcy Code § 1307(c), 11 U.S.C. § 1307(c) (1979 & Supp.1987), provides:
[O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause....

case or to convert it to a case under Chapter 7 of the Bankruptcy Code for "cause". While "cause" is partially defined in section 1307(c), none of the specific provisions applies to a post-confirmation attack on a confirmation order.

In two cases the court has dismissed a Chapter 13 case after confirmation for cause, pursuant to Bankruptcy Code § 1307(c), where the debtor was ineligible to be a debtor under Chapter 13, but this fact was not brought to the court's attention at the time of confirmation.[23] *In re Koehler*, 62 B.R. 70 (Bankr.D.Neb.1986) (dismissed for lack of jurisdiction); *Mercantile Holdings v. Dobkin (In re Dobkin)*, 12 B.R. 934 (Bankr.N.D.Ill.1981).

No eligibility issue is raised by the IRS in this case.

### 4. Correction of Clerical Error

Finally, a party may move to correct a clerical mistake in a judgment or order pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, which is incorporated by reference in Bankruptcy Rule 9024(a). The IRS does not claim a clerical error by the Court in this case, and it seeks no relief under this rule.

### V. CONCLUSION

The Court concludes that, while the IRS was not given notice of the first meeting of creditors in this case, it was served with the first amended plan, which gave notice of the confirmation hearing, and it was also given notice of the pendency of the case through the order to show cause. Because the confirmed plan determined the amount owing in taxes, including that owing to the IRS, the confirmation adjudicated this issue, and it became final. Thus the confirmed plan limited the subsequent IRS claim to $3,323, the amount provided in the plan for taxes.

Because the IRS had no notice that the debtor intended to limit the IRS to $1,000 of the amount provided for taxes, the IRS was entitled to make a timely claim for the entire amount of $3,323. While its claim (in a larger amount) was not timely, due process requires that the claim be allowed in this amount, because the IRS was not given notice of the bar date for filing its proof of claim.

In consequence, the late-filed claim of the IRS must be allowed in the amount of $3,323. Insofar as the debtor seeks to eliminate the provision of this amount for the IRS in her second amended plan, the amendment must be denied.

If the debtor completes her plan and obtains a discharge, the IRS claim will be discharged, insofar as it exceeds $3,323.

The debtor is directed to submit an order and a new second amended plan within seven court days consistent with this memorandum.

---

**23.** Three reported cases involve post-confirmation dismissal motions by a creditor under section 1307(c) for post-confirmation default: *In re Green*, 64 B.R. 530 (Bankr. 9th Cir.1986) (affirming denial of motion because default not material); *In re Garcia*, 42 B.R. 33, 34 (Bankr.D. Colo.1984) (dismissal of case on motion for relief from stay based on default in mortgage maintenance payments); *In re Jarvis*, 24 B.R. 46 (Bankr.D.Vt.1982) (motion denied because default not material).